UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

 Plaintiff,          Case No. 3:22-cr-86-1

vs.

FRANK SHANNON ALLEN,      District Judge Michael J. Newman

 Defendant.

---

**ORDER: (1) DENYING DEFENDANT FRANK SHANNON ALLEN'S MOTION TO SUPPRESS (Doc. No. 27); AND (2) DIRECTING THE PARTIES TO JOINTLY FILE A STATUS REPORT ON CASE PROCEEDINGS BY MAY 2, 2023**

---

  This criminal case is before the Court on Defendant Frank Shannon Allen's motion to suppress. Doc. No. 27. Defendant argues that officers interrogated him while he was in police custody without first advising him of his *Miranda* rights in violation of the Fifth Amendment to the Constitution. Doc. No. 64 at PageID 260–61; *see also Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). Defendant asserts that this caused him to make an incriminating statement, which now, along with the illegal firearms in his home that were found because of that statement, must be suppressed. *Id.* at PageID 259. The Court held an evidentiary hearing on Defendant's motion on January 30, 2023, and heard testimony from FBI Agent Kenny Howard; Greene County Deputy Sheriff Chris Fischer; City of Beavercreek Detective Sean Williams; and Defendant Frank Shannon Allen. *See* Doc. No. 63. The Government also presented video from a body camera attached to Detective Williams that captured Defendant's statements. *See* Gov't Exh. 3a. Defendant filed a post-hearing brief (Doc. No. 64), and the Government filed an opposition memorandum (Doc. No. 65). Defendant did not submit a reply brief, so this matter is ripe for

review. For the reasons that follow, the Court denies Defendant's motion.

## I.     BACKGROUND

According to testimony and other evidence presented during the evidentiary hearing, officers[1] executed a federal search warrant at Defendant's residence on July 12, 2022 at approximately 6:05 AM in connection with several suspected violations of federal law, including fraud and theft of United States property. Doc. No. 63 at PageID 185–86. Defendant, his wife, and two children were in the residence when the officers executed the warrant. *Id.* at PageID 205. Firearms were not included on the list of items in this search warrant, and none of the individuals in the residence when the warrant was executed were suspected of having a firearm on them. *Id.* at PageID 186, 194. However, before executing the warrant, the officers were briefed on Defendant's criminal history and his resulting prohibition against possessing firearms. *Id.* at PageID 188.

The officers executing the search warrant forcibly entered the house; shortly after, saw Defendant's wife and children; and after "probably a couple minutes," Defendant came down the stairs. *Id.* at PageID 216. The officers then, as Officer Fischer testified in the evidentiary hearing, handcuffed Defendant behind his back. *Id.* at PageID 216–17. Officer Fischer also testified that Defendant was "not free to leave" at that point. *Id.* at PageID 216. Defendant was not *Mirandized* while he was in the house. *Id.* at PageID 206, 231.

Defendant and the Government's accounts of what transpired at this point diverge. In Defendant's re-telling, while the officers and Defendant were still in the house, an officer asked him, "Was anything—anybody upstairs?" *Id.* at PageID 254. Defendant testified that this caused

---

[1] Of the three officers who testified at the evidentiary hearing, two were present for the execution of the search warrant: Officer Fischer (*see* Doc. No. 63 at PageID 212), and Officer Williams (*id.* at PageID 226–27). Officer Howard was not present for the execution of the search warrant. *Id.* at PageID 186.

2

him to respond that there were guns upstairs. *Id.* at PageID 254. In support of this claim, Defendant relies on the video of the search warrant execution. *Id.* at PageID 246–47. Officer Williams agreed during the evidentiary hearing that on the video, which was played at the hearing, voices can be heard before Defendant tells the officers there are guns upstairs. *Id.* However, Officer Williams could not identify who spoke or what they said. *Id.* at PageID 247. Moreover, Defendant acknowledges in his post-hearing brief that "[t]he precise words spoken prior to Defendant's statement cannot be understood." Doc. No. 64 at PageID 261. Meanwhile, the testifying officers explain that Defendant spontaneously—without questioning or interrogation by officers—said that there were guns upstairs. Doc. No. 63 at PageID 206–07, 232–33.

Officer Williams testified that Defendant's statement prompted the officers to apply for a second search warrant for weapons in the house. *Id.* at PageID 233–34. While he worked on that, he learned that a rifle had been found upstairs[2] and Defendant's ID was in plain view in the truck outside the house. *Id.* at PageID 234. Therefore, in state court, the officers applied for a search warrant of the residence, its residents, and the vehicle for firearms. *Id.* at PageID 234–35. After a judge in state court approved the second search warrant (*id.* at PageID 235), the officers found a firearm in the truck and ammunition (*id.* at PageID 235–36).

Defendant currently faces three counts in a superseding indictment: (1) knowingly possessing firearms after previously being convicted of a crime punishable by imprisonment for over one year; (2) knowingly possessing ammunition after previously being convicted of a crime punishable by imprisonment for over one year; and (3) conspiracy to defraud the United States and

---

[2] Officer Fischer stated that the rifle was found during an initial search "just for bodies[,]" (which the officers conduct to ensure that no person is hidden and plans to "jump out . . . and harm" the officers). Doc. No. 63 at PageID 208. According to Officer Fischer, finding the rifle prompted the officers to apply for the second search warrant. *Id.* at PageID 210. Although there is a slight discrepancy in the two officers' accounts of what led them to seek the second warrant, this is most likely due to their different perspectives and assigned duties while executing the initial search warrant.

violate federal law through theft and conversion, fraud in connection with federal emergency benefits, and wire fraud.³ Doc. No. 26 at PageID 70–72. He moves to suppress the incriminating statement that he contends was made in violation of *Miranda*, and any evidence resulting from that statement. Doc. No. 64 at PageID 259.

## II.      FIFTH AMENDMENT STANDARD

The Fifth Amendment states, "No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. Const. amend. V. "To the ends of protecting that right, *Miranda* requires law-enforcement officers to give warnings, including the right to remain silent, before interrogating individuals whom the officers have placed 'in custody.'" *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *Stansbury v. California*, 511 U.S. 318, 322 (1994)); *see also Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("[T]he special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation").

In determining whether an individual is in custody, "'the ultimate inquiry' turn[s] on whether 'a formal arrest' occurred or whether there was a 'restraint on freedom of movement of the degree associated with a formal arrest.'" *Panak*, 552 F.3d at 465 (quoting *Stansbury*, 511 U.S. at 322). "[I]nterrogation, as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." *United States v. Avery*, 717 F.2d 1020, 1024 (6th Cir. 1983) (quoting *Innis*, 446 U.S. at 300). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit

---

³ This superseding indictment also charges three other individuals who are not associated with this motion to suppress. *See* Doc. No. 26.

an incriminating response form the suspect." *Innis*, 446 U.S. at 301.

Generally, statements made during a custodial interrogation without proper *Miranda* warnings must be suppressed. *Miranda*, 384 U.S. at 492. However, "physical evidence found because of voluntary, un-*Mirandized* statements may be admitted." *United States v. Burton*, 828 F. App'x 290, 292 (6th Cir. 2020) (first citing *United States v. Patane*, 542 U.S. 630, 634 (2004) (plurality opinion); and then citing *id.* at 645 (Kennedy, J., concurring in the judgment)); *see also United States v. Bradley*, 163 F. App'x 353, 357 (6th Cir. 2005). A Defendant's unwarned statement is nevertheless voluntary when it is obtained without the use of "coercion or improper tactics . . . ." *Oregon v. Elstad*, 470 U.S. 298, 308 (1985); *see also Patane*, 542 U.S. at 640 (plurality opinion) ("We have repeatedly explained 'that those subjected to coercive police interrogations have an automatic protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial.' This explicit textual protection supports a strong presumption against expanding the *Miranda* rule any further" (citations omitted) (quoting *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (plurality opinion))).

"It is well settled that in seeking suppression of evidence[,] the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (quoting *United States v. Feldman*, 606 F.2d 673, 679 n.11 (6th Cir.1979)). A defendant "has the burdens of production and persuasion in seeking suppression of . . . evidence." *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998) (citations omitted). The Court "consider[s] the evidence in the light most favorable to the government." *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013) (citing *Rodriguez-Suaco*, 346 F.3d at 643); *see also United States v. Oliver*, 126 F. Supp. 2d 495, 500 (S.D. Ohio 2000).

5

### III. ANALYSIS

It's uncontroverted that Defendant was in custody when he told the officers there were guns upstairs and that the officers did not advise Defendant of his *Miranda* rights. *See* Doc. No. 63 at PageID 205–06; *id.* at PageID 216 ("Mr. Allen made his presence known and came down to us, and we placed him into custody"); Doc. No. 64 at PageID 260, 264; Doc. No. 65 at PageID 273. Thus, the only outstanding question for the Court to address is whether Defendant was interrogated while in custody. *See* Doc. No. 65 at PageID 275 ("The Government concurs with the Defense that '[t]he critical question here is whether Defendant's statement was unprompted, as the Government suggests, or if it was elicited by a law enforcement officer'" (alteration in original) (citing Doc. No. 64 at PageID 263)).

If Defendant admitted that he had a firearm upstairs without police prompting, there is no Fifth Amendment violation because "[v]olunteered statements" are not suppressible. *Miranda*, 384 U.S. at 478; *see Innis*, 446 U.S. at 300–01 (*Miranda* warnings are only required when "a person in custody is subjected to either express questioning or its functional equivalent"); *see also United States v. McConer*, 530 F.3d 484, 496–98 (6th Cir. 2008) (finding no *Miranda* violation where the defendant initiated the conversation with the officer); *United States v. Chalmers*, 554 F. App'x 440, 448 (6th Cir. 2014) (same); *United States v. Johnson*, 171 F. App'x 499, 502 (6th Cir. 2006) ("Though [the defendant] was in custody, his statement was neither elicited nor prompted. An inculpatory statement is fully admissible if made voluntarily" (citing *Innis*, 446 U.S. at 299–300)).

Whether Defendant's statement was volunteered or in response to police questioning requires the Court to weigh the officers' credibility against Defendant's. *See United States v. Beasley*, No. 1:11-cr-00072, 2012 WL 1068138, at *4 (S.D. Ohio Mar. 29, 2012) (making a

credibility determination in favor of the officers after hearing and viewing the evidence). The two officers present at the execution of the search warrant testified at the evidentiary hearing that Defendant's statement was spontaneous. Doc. No. 63 at PageID 206–07, 232–33. Defendant relies on the video of the search warrant execution (*see* Gov't Exh. 3a), but the voices before Defendant says there are firearms upstairs are muffled and unintelligible (Doc. No. 63 at PageID 246–47)—as Defendant admits in his post-hearing brief (Doc. No. 64 at PageID 261). Defendant is, therefore, left with only his own testimony to prove that the officers interrogated him. Doc. No. 63 at PageID 252–53.

The Court finds that because Defendant bears the burden to justify suppression of his incriminating statement, *see United States v. Hicks*, 190 F. Supp. 3d 733, 740 (S.D. Ohio 2016), and because the Court must view the evidence in the Government's favor, *see United States v. Vreeland*, 684 F.3d 653, 658 (6th Cir. 2012), Defendant has not met his burden to justify suppression of the evidence at issue here. The officers' testimony is credible: their recollection of Defendant's statement is consistent and their accounts of the events on that day align with the arrest warrant in this case. *See* Doc. No. 1. No evidence of record provides a reason to question the officers' credibility. *See United States v. Foster*, 376 F.3d 577, 584 (6th Cir. 2004) ("[T]he district court is 'in the best position to judge credibility[]'" (quoting *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996))). Thus, the Court finds that Defendant's statement was volunteered and not in response to any police questioning. Therefore, the officers did not err by not advising Defendant of his *Miranda* rights.

Importantly, even if the Court found that Defendant's statement was prompted by an officer's question and must be suppressed, the tangible evidence derived from that statement would not be suppressed absent evidence of coercion. *See Patane*, 542 U.S. at 643; *United States v.*

7

*Fowler*, 535 F.3d 408, 416 (6th Cir. 2008) ("An incriminating statement is deemed to have been coerced 'when the conduct of the law enforcement officials is such as to overbear the accused's will to resist'" (quoting *United States v. Haynes*, 301 F.3d 669, 684 (6th Cir. 2002))). Assuming, *arguendo*, that Defendant was asked a question, it was a single question and he offers no evidence of trickery. Therefore, there is no evidence of coercion and the tangible evidence of firearms would be admitted into evidence in any circumstance. The Court need not reach this question here, though, because this Court finds that the officers did not ask Defendant a question. *See United States v. Bermudez*, 238 F.3d 424 (Table), No. 99-6097, 2000 WL 1871676, at *4 (6th Cir. Dec. 11, 2000) ("The only 'coercion' found by the district court was the alleged 'what I've got on you' statement by [the arresting officer]. The magistrate found that this statement was never made, and we agree with that credibility determination").

## IV. CONCLUSION

For the aforementioned reasons, the Court finds no violation to Defendant's Fifth Amendment right against self-incrimination. Thus, Defendant's motion (Doc. No. 27) is **DENIED**. Defendant may renew this motion upon a showing of good cause if additional evidence comes to light that undermines the Court's conclusions here. *See United States v. Gulley*, 780 F. App'x 275, 282 (6th Cir. 2019). The parties are **DIRECTED** to file a joint status report on case proceedings by May 2, 2023.

**IT IS SO ORDERED.**

April 26, 2023               s/Michael J. Newman
                             Hon. Michael J. Newman
                             United States District Judge